DECISION AND JUDGMENT ENTRY
{¶ 1} Dr. Kristina Marcum, D.O., and Dan Marcum appeal the trial court's summary judgment entered in favor of Holzer Clinic, Inc., Dr. Jamal Haddad, D.O., and Dr. Charles Stone, M.D. in Marcum's medical malpractice action. They contend that the court improperly entered summary judgment in appellees' favor because: (1) Drs. Haddad's and Stone's affidavits attesting that they complied with the applicable standard of care in their treatment of Dr. Marcum are inherently self-serving, incompetent, and should not be considered as Civ.R. 56 evidence; (2) genuine issues of material fact remain regarding whether res ipsa loquitur applies; and (3) genuine issues of material fact remain regarding the torts of battery and lack of informed consent.[1]
 {¶ 2} Because the Ohio Supreme Court has explicitly recognized that a defendant-treating physician's affidavit attesting that he complied with the applicable standard of care in a medical malpractice action is competent evidence in Civ.R. 56 proceedings, the trial court did not erroneously consider Drs. Haddad's and Stone's affidavits. Second, even under a res ipsa loquitur theory, expert testimony is required in medical malpractice cases. Appellants have none, and thus, the trial court did not err by entering summary judgment under this theory. Third, no genuine issues of material fact remain regarding the torts of battery or lack of informed consent. Appellees presented admissible Civ.R. 56 evidence showing that Dr. Marcum was properly informed, and appellants did not respond with competent Civ.R. 56 evidence regarding this issue. Thus, the court properly entered summary judgment on this claim. Therefore, we affirm the trial court's judgment.
 {¶ 3} Dr. Marcum underwent surgery to attempt to correct problems associated with endometriosis and abdominal adhesions. During surgery, an enterotomy (a hole in the small bowel) occurred. Dr. Marcum's surgeon, Dr. Haddad, consulted Dr. Stone, who repaired the enterotomy.
 {¶ 4} Appellants filed a complaint against several defendants, including Holzer Clinic, Inc., Dr. Jamal Haddad, D.O., and, Dr. Charles Stone, M.D.[2] They alleged medical malpractice, battery/tort of lack of informed consent, loss of consortium, negligence, mental anguish, and violation of the family medical leave act.[3]
 {¶ 5} Appellees subsequently filed a summary judgment motion. In it, they argued that no genuine issue of material fact remained regarding whether they complied with the applicable standard of care. They referred to Dr. Haddad's and Dr. Stone's affidavits in which each averred that he, and the other, complied with the applicable standard of care. Dr. Haddad attested that during the surgery, an enterotomy occurred and that this is a known complication of the surgery he performed on Dr. Marcum. When he discovered the enterotomy, he immediately consulted Dr. Stone, a general surgeon. Dr. Stone successfully repaired the enterotomy. Dr. Haddad opined that both he and Dr. Stone exercised that degree of skill, care, and diligence required by the recognized standards of the medical community. Dr. Stone similarly opined that both he and Dr. Haddad exercised proper care in their treatment of Dr. Marcum. Dr. Haddad further asserted that before surgery, he explained the risks and complications. Appellees then argued that in light of their evidence, appellants carried a burden to come forward with admissible Civ.R. 56 evidence showing the existence of a genuine issue of material fact.
 {¶ 6} In response to appellees' motion, appellants claimed that appellees had failed to identify their expert witnesses and requested the court to prohibit appellees from calling expert witnesses. Appellants also argued that appellees filed their motion before completion of discovery and that appellees were wrong to state that appellants carry a burden to show a genuine issue of material fact.
 {¶ 7} In an attempt to create a genuine issue of material fact, appellants submitted Dr. Marcum's affidavit. She stated: "I have personal knowledge of the matters asserted in the above captioned matter and am competent to testify as to the same. I hold a medical degree as a D.O. * * * * Upon information and belief, Defendants have malpracticed, among other things, by improper lysis of adhesions, removal of an ovary and tube, exceeding the consent given for the procedure and laceration of my bowel. The Defendants failed to perform within the standard of care required and did not exercise the degree of skill, care and diligence required."
 {¶ 8} She further asserted that appellants (1) exceeded the consent given, (2) "the actions and failures to act of Defendant are negligent," (3) "the actions and failures to act of Defendants have caused substantial mental anguish to both Plaintiffs," and (4) "there are material issues of genuine fact in this matter, as is set forth above and as will be more fully elicited at trial." Nowhere in her affidavit did she state that she is licensed to practice medicine and devotes at least fifty percent of her professional time in the active clinical practice of medicine.
 {¶ 9} Appellees then filed a response attacking Dr. Marcum's affidavit. Appellees asserted that the trial court should not consider her affidavit because her expert medical testimony is not admissible. Appellees argued that Dr. Marcum's affidavit was not based on personal knowledge because at the time: (1) she was under general anesthesia, which rendered her unconscious; (2) she did not state that she reviewed medical records; and (3) she did not state that she has personal knowledge regarding the standard of care for a gynecologic surgeon or a general surgeon. Appellees further pointed out that Dr. Marcum's failed to comply with Evid.R. 601(D): She did not state that she is licensed to practice medicine or that she spends more than one-half of her professional time in the active clinical practice of medicine. Finally, appellees noted that Dr. Marcum did not express her opinions within a reasonable degree of medical certainty.
 {¶ 10} Appellants answered appellees' response, but did nothing to correct the deficiencies with Dr. Marcum's affidavit, and they did not produce any other evidence.
 {¶ 11} The court granted appellees summary judgment on all claims because it agreed with appellees that Dr. Marcum was not competent to render an expert opinion on the issues before it. It thus concluded that appellees, by producing Drs. Haddad's and Stone's affidavits, met their burden of showing the absence of a material fact regarding whether appellees failed to comply with the applicable standard of care and that appellants failed to reciprocate. The court then concluded that the remaining claims were dependent upon appellants' medical malpractice claim and that because the medical malpractice claim could not survive appellees' summary judgment motion, none of the other claims could.
 {¶ 12} Appellants' brief does not set forth traditional assignments of error in the manner required by App.R. 16. Instead, they raise "Issues Presented" and identify "assignments of error" in general fashion. Nonetheless, we will review their "issues presented" along with the "assignments of error" and address what we believe are the main arguments.
 {¶ 13} First, they contend that the court incorrectly considered Drs. Haddad's and Stone's affidavits, which attest that they complied with the applicable standard of care in their treatment of Dr. Marcum. They claim that the court should not have considered the affidavits because: (1) appellees failed to identify Drs. Haddad and Stone as expert witnesses; (2) neither doctor was subject to cross-examination; (3) Dr. Haddad cannot be an expert witness for Dr. Stone, and Dr. Stone cannot be an expert witness for Dr. Haddad; (4) Dr. Stone, a general surgeon, is not competent to testify concerning the standard of care for a gynecologic surgeon; and (5) Dr. Stone lacks personal knowledge of the events leading up to the enterotomy, because he was not present at that moment. Second, appellants contend that genuine issues of material fact remain concerning whether they can prevail under a res ipsa loquitur theory, arguing that the doctrine places the burden on appellees to prove that they were not at fault. Third, appellants assert that genuine issues of material fact remain regarding the torts of battery and lack of informed consent, claiming that Dr. Marcum's affidavit regarding this issue conflicts with Dr. Haddad's affidavit.
 A SUMMARY JUDGMENT {¶ 14} We conduct a de novo review of a trial court's summary judgment decision. See, e.g., Grafton v. Ohio Edison Co.
(1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241; Lexford Prop.Mgmt., L.L.C. v. Lexford Prop. Mgmt., Inc. (2001),147 Ohio App.3d 312, 316, 770 N.E.2d 603. Under Civ.R. 56, summary judgment is proper when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion is made, that conclusion is adverse to that party. See, e.g., Grafton.
 {¶ 15} A court may not sustain a summary judgment motion solely on the moving party's conclusory assertion that the nonmoving party has no evidence to prove its case. Instead, the "party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis of the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429,674 N.E.2d 1164. If the moving party satisfies this initial burden, the nonmoving party then has a reciprocal burden under Civ.R. 56(E) to set forth facts showing that there is a genuine issue for trial. Dresher, 75 Ohio St.3d at 293.
 {¶ 16} In this case, appellees met their initial burden by producing Drs. Haddad's and Stone's affidavits.[4]
Appellants did not respond with proper Civ.R. 56 evidence. Thus, the trial court appropriately entered summary judgment in appellees' favor.
 B MEDICAL MALPRACTICE {¶ 17} To succeed on a medical malpractice claim, a plaintiff must demonstrate through expert testimony that the physician's conduct fell below the "prevailing standard of care." Ramage v.Central Ohio Emergency Servs. (1992), 64 Ohio St.3d 97, 102,592 N.E.2d 828. "Whether negligence exists is determined by the relevant standard of conduct for the physician. That standard is proved through expert testimony." Berdyck v. Shinde (1993),66 Ohio St.3d 573, 579, 613 N.E.2d 1014, citing Bruni v. Tatsumi
(1976), 46 Ohio St.2d 127, 346 N.E.2d 673.
 {¶ 18} In Crosswhite v. Desai (1989), 64 Ohio App.3d 170,580 N.E.2d 1119, the court explained the underlying principle for requiring expert testimony in a medical malpractice case: "It has long been the rule in most jurisdictions that in cases of medical malpractice, expert testimony is not merely permitted but required of the plaintiff to meet his burden of proof. Commenting on the rule, Wigmore classifies medical malpractice as an issue of special experience concerning which testimony may be received only of a person of that special experience. * * *. Absent that requirement, a plaintiff would prefer `* * * to rest his case on the mere facts of his sufferings, and to rely upon the jury's untutored sympathies, without attempting specifically to evidence the defendant's unskillfulness as the cause of those sufferings.' Ohio has long followed suit, holding `* * * that expert testimony is ordinarily needed to establish the requisite standard of care and skill a physician owes in his treatment of a patient.' Hoffman v. Davidson (1987), 31 Ohio St.3d 60, 62,508 N.E.2d 958, 960-61 (citing Bruni v. Tatsumi (1976),46 Ohio St.2d 127, 346 N.E.2d 673)." Id. at 174. (citations omitted).
 {¶ 19} It is well established that a plaintiff's failure to present expert testimony showing the recognized standards of the medical community is fatal to a medical malpractice claim. SeeRogoff v. King (1993), 91 Ohio App.3d 438, 446; Jones v. RocheLaboratories (1992), 84 Ohio App.3d 135, 139; Copeland v.University Radiologists of Cleveland, Inc. (April 22, 1993), Cuyahoga App. No. 62332. Thus, in the absence of an opposing affidavit of a qualified expert witness for the plaintiff, the affidavit of a defendant-treating physician attesting to his compliance with the applicable standard of care presents a legally sufficient basis upon which a trial court may grant a summary judgment motion in a medical malpractice action. Hoffmanv. Davidson, (1987), 31 Ohio St.3d 60, 62, 508 N.E.2d 958; see, also, Zarlinga v. Lampert (Feb. 26, 1998), Cuyahoga App. No. 72294; Kamenar v. Radiology Associates of Barberton, Inc. (Apr. 23, 1997), Summit App. No. 17957. Cf. Roselle v. Nims, Franklin App. No. 02AP-423, 2003-Ohio-630, at ¶ 31 (noting a defendant in a legal malpractice action possesses the required skill and knowledge to testify to whether he or she met the applicable standard of care, thus eliminating the need for an independent expert in defense of a claim of legal malpractice); Hooks v.Ciccolini, Summit App. No. 20745, 2002-Ohio-2322 (stating that affidavit from acting attorney is legally sufficient basis upon which to grant motion for summary judgment in legal malpractice action absent opposing affidavit of qualified expert witness for plaintiff). When confronted with a properly supported summary judgment motion in a medical malpractice case, the plaintiff may not simply rest upon the allegations of medical negligence as stated in her complaint. See Hoffman, 31 Ohio St.3d at 61;Saunders v. Cardiology Consultants, Inc. (1990),66 Ohio App.3d 418, 420, 584 N.E.2d 809; Guth v. Huron Road Hosp. (1987),43 Ohio App.3d 83, 84, 539 N.E.2d 670; Deer v. River Valley HealthSystems (Jan. 3, 2001), Lawrence App. No. 00CA20.
 {¶ 20} For expert testimony to be competent and admissible during summary judgment proceedings, it must comply with the Rules of Evidence governing the admissibility of opinions. "Pursuant to Civ.R. 56(C), a court may not consider any evidence when ruling on a motion for summary judgment unless it conforms with Civ.R. 56." Douglass v. Salem Community Hosp.153 Ohio App.3d 350, 2003-Ohio-4006, 794 N.E.2d 107, at ¶ 21. According to Civ.R. 56(E), "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Thus, affidavits containing opinions must meet the requirements in the Rules of Evidence governing the admissibility of opinions, including Evid.R. 601(D). See Tomlinson v.Cincinnati (1983), 4 Ohio St.3d 66, 446 N.E.2d 454, paragraph one of the syllabus; see, also, Douglass. "[A] plaintiff's failure to establish the competency of its medical expert under Evid.R. 601(D) is proper grounds for summary judgment."Kurlansky v. Blythe, Hamilton App. No. C-010329, 2004-Ohio-766, at ¶ 22.
 {¶ 21} Evid.R. 601(D) governs the competency of expert witnesses in the context of medical malpractice cases and provides that "[e]very person is competent to be a witness except": "A person giving expert testimony on the issue of liability in any claim asserted in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care, or treatment of any person by a physician or podiatrist, unless the person testifying is licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state, and unless the person devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school."
 {¶ 22} The purpose of Evid.R. 601(D) is "to preclude testimony by the physician who earns his living or spends much of his time testifying against his fellows as a professional witness, and to prevent those whose lack of experiential background in the very field they seek to judge, the clinical practitioner, makes the validity of their opinions suspect, from expressing those opinions for pay or otherwise." McCrory v.State (1981), 67 Ohio St.2d 99, 103, 423 N.E.2d 156.
 {¶ 23} Thus, the general rule for expert medical witnesses is that: "the witness must demonstrate a knowledge of the standards of the school and specialty, if any, of the defendant physician which is sufficient to enable him to give an expert opinion as to the conformity of the defendant's conduct to those particular standards and not to the standards of the witness' school and or specialty if it differs from that of the defendant." Hudson v.Arias (1995), 106 Ohio App.3d 724, 729, 667 N.E.2d 50. "When the fields of medicine overlap, a witness from a school or specialty other than that of the defendant physician may qualify as an expert witness if he demonstrates sufficient knowledge of the standards of the defendant's school and specialty enabling him to give an expert opinion as to the conformity of the defendant's conduct to those particular standards." Ishler v. Miller
(1978), 56 Ohio St.2d 447, 453, 384 N.E.2d 296, citing Alexanderv. Mt. Carmel Med. Ctr. (1978), 56 Ohio St.2d 155, 158,383 N.E.2d 564.
 {¶ 24} The determination of whether a medical witness is competent to testify lies within the sound discretion of the trial court, and we ordinarily will not reverse such rulings unless there is a clear showing that the court abused its discretion. See Williams v. Reynolds Road Surgical Center, LTD,
Lucas App. No. L-02-1144, 2004-Ohio-1645 (citing Campbell v.Warren Gen. Hosp. (1994), 105 Ohio App.3d 417, 421,664 N.E.2d 542; Akron v. Pub. Util. Comm. (1967), 5 Ohio St.2d 237, 242,215 N.E.2d 366); see, generally, Miller v. Bike Athletic Co.
(1998), 80 Ohio St.3d 607, 616, 687 N.E.2d 735. An "abuse of discretion" implies that a court acted in "an unreasonable, arbitrary, or unconscionable manner." See, e.g., State ex rel.Sartini v. Yost, 96 Ohio St.3d 37, 2002-Ohio-3317,770 N.E.2d 584, at ¶ 21; State v. Herring (2002), 94 Ohio St.3d 246, 255,762 N.E.2d 940, Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. An abuse of discretion amounts to more than an error of judgment, but instead equates to "perversity of will, passion, prejudice, partiality, or moral delinquency."Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621,614 N.E.2d 748. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. See, e.g., Berk v. Matthews (1990),53 Ohio St.3d 161, 169, 559 N.E.2d 1301.
 {¶ 25} In Hoffman, supra, the court determined that the defendant-treating physician, Dr. Davidson, was competent to render an expert opinion and that his affidavit constituted a legally sufficient basis upon which to grant a summary judgment motion in a medical malpractice action, absent an opposing affidavit of a qualified expert witness for the plaintiff. The court noted that the physician: "attested to his qualifications; explained the requisite standard of care of a podiatric surgeon; explained the steps he took to inform Marie Hoffman of the alternatives to surgery, the potential complications involved in the surgical procedure and the surgical procedure itself; stated that he reviewed this information with [the plaintiff] prior to the surgery; and further attested that his examination, diagnosis and surgery were performed in accordance with proper and accepted standards of podiatric care and treatment." Id. at 61. The court concluded that this evidence alone placed a duty on the plaintiff to respond with competent opposing expert testimony and that her failure to do so justified summary judgment in the defendant's favor. See, also, Phelps v. Swift (Apr. 10, 2001), Columbiana App. No. 00-CO-42.
 {¶ 26} Here, contrary to appellants' protestations, the trial court did not abuse its discretion by determining that appellees' opinions are competent and admissible. Appellees fulfilled the requirements of Evid.R. 601(D) by asserting that they are licensed to practice medicine and that they devote at least one-half of their professional time to the active practice of clinical medicine. While the self-serving nature of their testimony may render it incredible to a jury, simply because they happen to be named defendants in the case does not render their opinions incompetent or inadmissible. See Hoffman.
 {¶ 27} Furthermore, both physicians' testimony is based upon personal knowledge. Dr. Haddad performed the surgery and consulted with Dr. Stone. Although Dr. Stone was not present at the exact time of the enterotomy, Dr. Stone stated that he reviewed the medical records.
 {¶ 28} We need not address appellants' argument that Dr. Stone's opinion is incompetent because he does not practice gynecologic surgery. Even if Dr. Stone's testimony is not competent, Dr. Haddad's testimony that neither he nor Dr. Stone deviated from the standard of care is sufficient, absent competent opposing evidence, to sustain appellees' summary judgment motion.
 {¶ 29} Appellants' argument that Drs. Haddad's and Stone's testimony is not admissible because appellees allegedly failed to identify them as expert witnesses is not persuasive. Assuming appellants properly requested the trial court to strike the doctors' testimony, such a ruling would be within the trial court's discretion. See, generally, Samadder v. DMF of Ohio,Inc., 154 Ohio App.3d 770, 2003-Ohio-5340, 798 N.E.2d 1141, at ¶ 17.
 {¶ 30} Appellants' contention that the doctors' testimony was inadmissible because it was not subject to cross-examination is meritless. Affidavits have long been considered proper Civ.R. 56 evidence, even though the affiants are not subject to cross-examination. In Schroeder v. Tennill (Aug. 27, 1990), Stark App. No. CA-8123, at fn.2, the court rejected a similar argument: "In its brief, [appellee] claims, `The affidavit is not subject to cross-examination, nor have depositions been taken. . . .' The appellee further claims that the affidavit is a `self-serving declaration.' `We do not know for sure if that is the case.' Appellee misses the import of Civ.R. 56 and failed to avail of the option granted in Civ.R. 56(F). For purposes of summary judgment, a self-serving affidavit, unchallenged, justifies a finding that reasonable minds can come to the conclusion that the claim is true."
 {¶ 31} We also reject appellants' argument that Dr. Marcum's affidavit sufficiently created a genuine issue of material fact concerning whether appellees complied with the applicable standard of care. Dr. Marcum's affidavit does not meet the requirements of Evid.R. 601(D) and, thus, is not admissible. She did not state that she is licensed to practice medicine or that she devotes at least one-half of her professional time to the active practice of clinical medicine.
 {¶ 32} Consequently, because appellees supported their summary judgment motion with competent and admissible evidence showing the absence of a material fact and appellants failed to respond as Civ.R. 56(E) provides, the trial court did not err by entering summary judgment on appellants' medical malpractice claim and the claims based upon it.
 C RES IPSA {¶ 33} Appellants also argue that genuine issues of material fact remain regarding the doctrine of res ipsa loquitur. Assuming that appellants properly raised this theory of relief during the trial court proceedings, expert testimony still is required and they have none.
 {¶ 34} Generally, in medical malpractice cases, "the doctrine of res ipsa loquitur does not obviate the requirement that the plaintiffs provide expert medical testimony on the standard of care that is ordinarily observed in these circumstances."Johnson v. Hammond (1988), 47 Ohio App.3d 125, 128,547 N.E.2d 1004. Rather, unless the negligence is apparent to laypersons, the plaintiff must present expert medical testimony "that in the ordinary course of events it would not have occurred if ordinary care had been observed." Anderson v. Motta (1991),73 Ohio App.3d 1, 3, 595 N.E.2d 1029. "To warrant application of the rule a plaintiff must adduce evidence in support of two conclusions: (1) That the instrumentality causing the injury was, at the time of the injury, * * * under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed." Hake v.Wiedemann Brewing Co. (1970), 23 Ohio St.2d 65, 66, 52 O.O.2d 366, 366-367, 262 N.E.2d 703. "The doctrine of res ipsa loquitur cannot be based solely upon the fact that the treatment was unsuccessful or terminated with poor or unfortunate results.Oberlin v. Friedman (1965), 5 Ohio St.2d 1, 8, 34 O.O.2d 1, 5,213 N.E.2d 168, 173. `* * * [B]efore applying the doctrine of res ipsa loquitur, the court must be warranted in taking judicial notice of the fact that the accident does not happen in the ordinary course of events unless there is negligence. * * * Where no probability of negligence is indicated by the mere happening of the accident, the jury should not be permitted to infer negligence without some evidence tending to prove it.' Soltz v.Colony Recreation Ctr. (1949), 151 Ohio St. 503, 511, 39 O.O. 322, 325-326, 87 N.E.2d 167, 172." Johnson,68 Ohio App.3d at 494.
 {¶ 35} In this case, appellants have not presented any expert evidence that in the ordinary course of events her injury would not have occurred if ordinary care had been observed. Accordingly, no genuine issues of material fact remain as to whether appellants can prevail under a res ipsa loquitur theory.
 D BATTERY/INFORMED CONSENT {¶ 36} Appellants next argue that genuine issues of material fact remain regarding the torts of battery and lack of informed consent.
 {¶ 37} If a physician treats a patient without authorization or consent, the physician has committed a technical battery. SeeLacey v. Laird (1956), 166 Ohio St. 12, 139 N.E.2d 25;Anderson v. St. Francis St. George Hosp. (1992),83 Ohio App.3d 221, 614 N.E.2d 841; Estate of Leach v. Shapiro (1984),13 Ohio App.3d 393, 469 N.E.2d 1047. Examples of a battery in a medical setting include cases when a surgeon removes a portion of a patient's stomach without her consent, Barrette v. Lopez
(1999), 132 Ohio App.3d 406, 725 N.E.2d 314, when a surgeon uses an anesthetic specifically prohibited by the plaintiff, Baird v.Kunzelman (Feb. 8, 1995), 2nd Dist. No. 14606, and when a different surgeon than the one authorized by the plaintiff performs the procedure. Watkins v. The Cleveland Clinic Found.
(1998), 130 Ohio App.3d 262, 719 N.E.2d 1052. But a physician's acts are lawful if the patient has expressly consented to the medical treatment. Anderson v. St. Francis-St. George Hosp.
(1992), 83 Ohio App.3d 221, 614 N.E.2d 841. When a defendant offers proof that a plaintiff has consented to a medical treatment and the plaintiff fails to present evidence that the physician's treatment was performed without consent or that the treatment exceeded his or her consent, there is a failure of proof on an essential element of battery. Lipp v. Kwyer, 6th Dist. No. L-02-1150, 2003-Ohio-3988 (trial court properly granted summary judgment on plaintiff's battery claim where plaintiff consented to procedure employed).
 {¶ 38} Appellants attempt to refute the affidavit that states Dr. Haddad fully informed Dr. Marcum of the risks and complications of the procedure with Dr. Marcum's statement that appellees "exceeded the consent given them." Conclusory statements are not sufficient to overcome a properly supported summary judgment motion. See Click v. S. Ohio CorrectionalFacility, 152 Ohio App.3d 560, 2003-Ohio-2208, 789 N.E.2d 643, at ¶ 14. They must be supported by a factual basis.
 {¶ 39} The doctrine of informed consent is based on the theory that every competent individual has a right to determine what shall be done with his or her own body. Siegel v. Mt. SinaiHosp. (1978), 62 Ohio App.2d 12, 403 N.E.2d 202. In Nickell v.Gonzalez (1985), 17 Ohio St.3d 136, 477 N.E.2d 1145, syllabus, the Supreme Court of Ohio set forth the proper standard of disclosure: "The tort of lack of informed consent is established when: (a) The physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any; (b) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and (c) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy."
 {¶ 40} The plaintiff bears the burden of proving by expert medical evidence what a reasonable medical practitioner of the same discipline, practicing in the same or similar communities under the same or similar circumstances, would have disclosed to his patient about the risks incident to a proposed treatment and of proving that the physician departed from that standard. Bedelv. Univ. OB/GYN Assoc., Inc. (1991), 76 Ohio App.3d 742, 744,603 N.E.2d 342. "[I]n order to prevail on a claim for lack of informed consent, medical expert testimony is necessary to establish the significant risks which would have been disclosed to support the plaintiff's claim since the probability and magnitude of those risks is a matter of medical judgment beyond the knowledge of the lay person." Ratcliffe v. UniversityHospitals of Cleveland (Mar. 11, 1993), Cuyahoga App. No. 61791, citing Ware v. Richey (1983), 14 Ohio App.3d 3, 7,469 N.E.2d 899. The court in Bedel, 76 Ohio App.3d at 744, similarly explained: "Generally, the plaintiff has the burden of proving by expert medical evidence what a reasonable medical practitioner of the same discipline, practicing in the same or similar communities under the same or similar circumstances, would have disclosed to his patient about the risks incident to a proposed treatment, and of proving that the physician departed from that standard. Pierce v. Goldman (May 17, 1989), Hamilton App. No. C-880320. Proof of the recognized standards of the medical community must be provided through expert testimony. Bruni v.Tatsumi (1976), 46 Ohio St.2d 127."
 {¶ 41} Here, appellants have not presented any expert testimony demonstrating what a reasonable medical practitioner of the same discipline, practicing in the same or similar communities under the same or similar circumstances, would have disclosed to Dr. Marcum. Appellees, on the other hand, have asserted that Dr. Haddad informed Dr. Marcum of the risks. Dr. Haddad stated in his affidavit that he explained the risks and complications to Dr. Marcum and that he did not deviate from the standard of care. Faced with this evidence, Civ.R. 56(E) required appellants to produce competent opposing evidence. As we already discussed, Dr. Marcum's affidavit does not show that she is competent to testify. Appellants have not responded to appellees' properly supported summary judgment with any other competent, admissible evidence. Therefore, the trial court properly entered summary judgment on the informed consent claim.
 {¶ 42} Based upon all of the foregoing reasons, we overrule all of appellants' assignments of error and affirm the trial court's judgment.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J., Harsha, J., Abele, J.: Concur in Judgment and Opinion.
[1] Although appellants' complaint alleges "battery," throughout the proceedings they also have referred to this claim as "lack of informed consent." Therefore, we will address both theories.
[2] Appellants eventually dismissed all of the other defendants.
[3] Appellants dismissed the claim asserting a violation of the family medical leave act.
[4] We address appellants' argument concerning the admissibility of the doctors' affidavits below.